# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

GRAY PHARM INC., ET AL.                    CASE NO.  3:24-CV-01067

VERSUS                                     JUDGE TERRY A. DOUGHTY

CARDINAL HEALTH 110 LLC                    MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION AND MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, are three motions: (1) a Motion to Dismiss Plaintiff's Petition for Damages [doc. #16] filed by Defendant Cardinal Health 110, LLC; (2) a Motion for Leave to File Plaintiffs' Second Amended Complaint [doc. #29] filed by Plaintiffs Gray Pharm, Inc., d.b.a Medicine Shoppe Pharmacy #1167, and Marco Moran; and (3) a Rule 11 Motion for Sanctions Against Plaintiffs and/or Plaintiffs' Counsel [doc. #34] filed by Defendant Cardinal Health 110, LLC.  The motions are opposed.  [doc. #19, 31, 37].

For the reasons detailed below, **IT IS ORDERED** that the Motion for Leave to File Plaintiffs' Second Amended Complaint [doc. #29] filed by Plaintiffs Gray Pharm, Inc., d.b.a Medicine Shoppe Pharmacy #1167, and Marco Moran is **GRANTED IN PART and DENIED IN PART**.

**IT IS RECOMMENDED** that the Motion to Dismiss Plaintiff's Petition for Damages [doc. #16] filed by Defendant Cardinal Health 110, LLC, be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that the Rule 11 Motion for Sanctions Against Plaintiffs and/or Plaintiffs' Counsel [doc. #34] filed by Defendant Cardinal Health 110, LLC, be **DENIED**.

## Background

This case arises from a business relationship between Gray Pharm Inc., a pharmacy operating in Louisiana, and Cardinal Health 110, LLC, a service provider to Gray Pharm.  Plaintiff Gray Pharm Inc. ("Gray Pharm") and Marco Moran ("Moran") (collectively, "Plaintiffs") filed a Petition for Damages against Cardinal Health 110, LLC ("Cardinal Health"), on July 3, 2024, in the Fourth Judicial District Court, Ouachita Parish, Louisiana.  (Petition [doc. #1-1]).  Cardinal Health removed the action to this Court on August 8, 2024.  (Notice of Removal [doc. #1]).  Gray Pharm seeks damages from Cardinal Health for breach of contract and negligence, resulting in financial losses, including compensatory damages, punitive damages, and attorney's fees and costs.  (Petition [doc. 1-1, p. 3]).

Plaintiffs allege that Cardinal Health disabled Gray Pharm's prescription process server, "Leadernet," which prevented the pharmacy from submitting claims to customers' insurance companies.  *Id.* at pp. 2-3.  This resulted in significant financial loss, and, as a result, Plaintiffs lost multiple clients who were unable to use their insurance with the pharmacy.  *Id.* at p. 3.  Additionally, Cardinal Health allegedly discontinued Pharmacy Benefit Manager services of "Leadernet," which is used to process insurance claims.[1]  *Id.*  This further hindered Gray Pharm's ability to conduct business effectively.  *Id.*

---

[1] Cardinal Health has clarified that LeaderNET is not a PBM but rather a Pharmacy Services Administrative Organization ("PSAO").  "The core function of a PSAO is to contract with a group of independent pharmacies, generally for an affordable monthly fee . . . [which allows] PSAOs

Gray Pharm also allegedly discovered that Cardinal Health was "negligent in billing." *Id.* Cardinal Health intercepted funds sent from the insurance companies for the remainer of the co-pay balance and did not provide the funds to Gray Pharm. *Id.* Additionally, Gray Pharm was double billed by Cardinal Health, resulting in increased financial strain, inventory shortages, and unnecessary liens. *Id.* Gray Pharm was also forced by the financial strain to change vendors, which resulted in additional loss of customers, revenue, and losses in contracted prescriptions. *Id.*

As a result of Cardinal Health's actions, Plaintiffs were forced to take out loans from private entities and sell their business below market value. *Id.* at p. 4. Plaintiffs allege the following damages:

(1) Petitioner has been denied adequate compensation, due to selling the company for fraction of the appraised value[;]

(2) Petitioner [ac]quired unnecessary debt[;]

(3) Property owned by Petitioner has lost value;

(4) Petitioner has incurred unnecessary expenses;

(5) Inconvenience;

(6) Embarrassment;

(7) Mental Anguish and/or Emotional Distress;

(8) Any other damages that become known through discovery or a trial;

(9) Delay in the ability to use the Property;

(10) Any other damages known at the time of this but not well-pled.

*Id.*

---

[to] amplify the voices of independent pharmacies with third-party payers and PBMs and create administrative efficiencies, allowing these small businesses to better use limited resources." (Memo in Support of M/Dismiss [doc. #17, p. 5]).

On September 5, 2024, Cardinal Health filed a Motion to Dismiss Plaintiff's Petition for Damages [doc. #16].  Cardinal Health argues that the Petition is a "textbook shotgun pleading." (Memo in Support of M/Dismiss [doc. #17, p. 8]).  The Petition provides Cardinal Health with no information on what relevance Moran has to any cause of action and provides no notice of what causes of action Moran would be attempting to allege.  *Id.* at pp. 8-9.  Cardinal Health further contends that there is a lack of sufficient factual allegations, and the use of the word "negligence" repeatedly does not establish a claim for negligence.  *Id.* at p. 9.  Gray Pharm has failed to allege that Cardinal Health owed it any legal duty.  *Id.* at p. 14.  As a result of insufficient factual allegations, Cardinal Health is unable to answer the Complaint.  *Id.* at p. 9.

Additionally, to the extent that Plaintiffs allege fraud, Cardinal Health argues they have failed to meet the higher standard for pleading fraud.  *Id.* at p. 10.  Plaintiffs have failed to state with particularity the circumstances constituting fraud or mistake as required by Federal Rule of Civil Procedure 9(b), and they have failed to allege a single misrepresentation.  *Id.* at pp. 10, 14. Furthermore, the Petition as a whole fails to plead the time period for any of the alleged claims. *Id.* at p. 11.  This has made it impossible for Cardinal Health to determine any applicable agreements or statute of limitations.  *Id.*  Regarding the breach of contract claim, Cardinal Health asserts that there is no allegation that it entered into a contract with Gray Pharm.  *Id.* at p. 5.  As for damages, Plaintiffs allege no statutory basis for punitive damages and no statutory or contractual basis for attorneys' fees.  *Id.* at pp. 15-16.

On September 26, 2024, Plaintiffs filed an opposition to the motion.  [doc. #19].  Therein, Plaintiffs allege that they purchased the pharmacy on April 27, 2015, and subsequently on December 21, 2016, Moran signed both the Associate Contract with Cardinal Health and the Medicine Shoppe Franchise Agreement, which outlined Cardinal Health's obligations to provide

essential services. *Id.* at pp. 1-2. On July 1, 2017, it was discovered that Cardinal Health had wrongfully terminated the Trade Account, the centralized payment process server, which led to significant disruptions. *Id.* at p. 2. The disconnection and the termination of the franchise agreement coincided with a decline in revenue from June to July 2017. *Id.*

Plaintiffs allege that the Petition is organized and methodically outlines the claims asserted therein—breach of contract, negligence, misrepresentation, and fraud. *Id.* at p. 3. For the breach of contract claim, Plaintiffs assert that Gray Pharm and Cardinal Health entered into a valid contractual relationship, and Cardinal Health breached this agreement by terminating the Trade Account. *Id.* Further, the Petition demonstrates that Cardinal Health was negligent by failing to maintain the Trade Account. *Id.* at p. 5. Finally, Plaintiffs contend they have sufficiently articulated claims for misrepresentation and fraud by alleging that Cardinal Health misrepresented the status of Gray Pharm's account by falsely claiming it was in arrears. *Id.* at p. 6. Plaintiffs maintain they have claims for punitive damages and attorneys' fees. *Id.* at p. 8.

To their opposition, Plaintiffs attached five exhibits. The first exhibit is a Franchise Agreement executed on October 22, 2016, between Medicine Shoppe International, Incorporated, and Gray Pharm. The second exhibit consists of a termination notice from Medicine Shoppe International, Incorporated, a general release, and an email from the Vice President of Medicine Shoppe International Incorporated, providing the executed License Agreement. The third exhibit is a handwritten piece of paper ostensibly accounting Gray Pharm's total monthly sales from May 2016 to March 2018. The fourth exhibit is a Business Associate Agreement executed on October 22, 2016, between the applicable Cardinal Health entities and Gray Pharm. The final exhibit is an Inventory Purchase Addendum, presumably an addendum to the Franchise Agreement.

On October 3, 2024, Cardinal Health filed a reply in support of its motion. [doc. #20]. Cardinal Health contends that Plaintiffs' opposition provides factual information that is not pled in the Petition and attaches exhibits contradicting the allegations. *Id.* at p. 1. Cardinal Health maintains that it is still unclear if Gray Pharm is bringing state or federal law claims, or both. *Id.* at p. 2. The response further fails to explain what contract Cardinal Health purportedly breached or what provisions of said contract were breached. *Id.* As for Moran, Cardinal Health argues that the Petition and the opposition memorandum fail to allege any cause of action properly asserted by Moran. *Id.* at p. 3. Plaintiffs' allegations of misrepresentation and fraud are deficient as they failed to demonstrate the required intent. *Id.* Finally, Cardinal Health contends that neither the Petition nor the opposition memorandum demonstrate entitlement to punitive damages or attorneys' fees. *Id.* at p. 4.

On May 2, 2025, Gray Pharm and Moran filed an Opposed Motion for Leave to File First Amended Complaint. [doc. #28]. On May 13, 2025, Gray Pharm and Moran filed an Opposed Motion for Leave to File Plaintiffs' Second Amended Complaint. [doc. #29]. In light of the second motion to amend, the undersigned denied as moot the first motion to amend complaint [doc. #28]. [doc. #30]. Gray Pharm and Moran argue that amendment should be permitted because all factors support them. [doc. #29-1, p. 2]. Further, Plaintiffs are not "seeking the amendment in bad faith or with a dilatory motive." *Id.* "Defendant cannot be prejudiced, or caught off guard, as no discovery has taken place." *Id.* The proposed Second Amended Complaint incorporates thirteen exhibits in support of the breach of contract claim, and it has removed the claim for punitive damages. *Id.* at p. 3. Although Gray Pharm and Moran filed the motion to amend, the proposed plaintiffs listed in the attached Second Amended Complaint are lists Gray Pharm and Jino Moran. [doc. #29, p. 3].

On May 27, 2025, Cardinal Health filed its opposition to Plaintiffs' Motion for Leave to File their Second Amended Complaint. [doc. #31]. Cardinal Health argues that the proposed complaint is futile as it contains compulsory counterclaims from a prior lawsuit that have been waived. *Id.* The proposed complaint also fails to state a cause of action against Cardinal Health and contains "immaterial and scandalous allegations." *Id.* Plaintiffs' counsel sent to Cardinal Health's counsel multiple proposed amended complaints and never fully allowed Cardinal Health the chance to respond before filing the multiple motions to amend in the record. [doc. #32, pp. 6-9].

Cardinal Health provides three reasons the proposed amended complaint is futile: (1) the breach of contract claim was a compulsory counterclaim to the 2017 litigation; (2) the allegations fail to state any prima facie cause of action against Cardinal Health; and (3) there is no basis for Jino Moran to state a cause of action against Cardinal Health. *Id.* at pp. 9-10.

First, in 2017, the parties were involved in a separate litigation. *Id.* at p. 10. Cardinal Health sued Gray Pharm and Moran for breach of contract due to unpaid trade account balances. *Id.* "The termination of the Credit Agreement and the Franchise Agreement are both driven by the same operative facts that led to the 2017 Litigation." *Id.* at p. 11. Plaintiffs make allegations regarding the same operative facts at issue in the 2017 litigation. *Id.* at p. 12. Additionally, even if the breach of contract claim was not a compulsory counterclaim in the prior litigation, Plaintiffs still have failed to allege facts to state a claim for breach of contract. *Id.*

In the event that Plaintiffs are bringing a fraud claim, Cardinal Health argues that the statute of limitations has run. *Id.* at p. 14. The claims would have had to been brought within five years of discovering the fraud. *Id.* The proposed complaint contains no allegations to show that Jino Moran was a party to any contract with Cardinal Health. *Id.* at p. 15. When Jino Moran signed

the Franchise Agreement and Inventory Purchase Addendum, he did so as an officer of Gray Pharm. *Id.*

Further, Cardinal Health contends that Plaintiffs have filed their lawsuit in the wrong court. *Id.* at p. 16. Section XII(C) of the Franchise Agreement places exclusive jurisdiction in the state and federal courts of Franklin County, Ohio. *Id.* Accordingly, the proposed amended complaint would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and is thus futile. *Id.* Finally, Cardinal Health argues that the allegations that Cardinal Health filed a fraudulent lawsuit and that a Cardinal Health employee committed criminal perjury are scandalous and should be stricken. *Id.*

On June 3, 2025, Gray Pharm and Jino Moran (collectively, "Plaintiffs") filed a reply in support of the motion to amend. [doc. #33]. Plaintiffs argue that Cardinal Health's opposition is "both legally and factually frivolous and warrants sanctions." *Id.* at p. 1. While Cardinal Health argues that the breach of contract claim should have been a compulsory counterclaim in the prior lawsuit, Cardinal Health fails to point out that it voluntarily dismissed the state court lawsuit without prejudice. *Id.* at p. 2. Plaintiffs argue further that a breach of contract claim is properly alleged because contracts were executed, Cardinal Health breached those contracts, and Plaintiffs were injured as a result. *Id.* Jino Moran has stated a claim as the owner of the pharmacy as he signed the Franchise Agreement, was compelled to the sell the pharmacy below market value, paid a taxable capital gain, and suffered irreparable damage to his business' reputation due to Cardinal Health's breach. *Id.* Finally, since Cardinal Health's actions were so inconsistent with the intention to enforce the forum selection clause, it is effectively waived. *Id.* Cardinal Health removed the matter to this Court, failed to file a Rule 12(b)(3) motion, and then "mounted a defense" in this Court. *Id.* Since Plaintiffs have demonstrated that Cardinal Health's opposition

was frivolous and not made in good faith, Plaintiffs should be awarded sanctions pursuant to Local Rule 7.6 for costs and attorneys' fees incurred in addressing this opposition. *Id.* at p. 3.

On June 25, 2025, Cardinal Health filed a Rule 11 Motion for Sanctions Against Plaintiffs and/or Plaintiffs' Counsel. [doc. #34]. Therein, Cardinal Health seeks the attorneys' fees and expenses incurred in preparing this motion and in responding to each filing Plaintiffs have made related to the pleadings. *Id.* Cardinal Health argues that from the start of this case, Plaintiffs failed to adequately investigate whether they had legitimate claims against Cardinal Health. [doc. #35, p. 4]. Plaintiffs' counsel provided multiple proposed amended complaints to Cardinal Health's counsel, involving numerous email exchanges and multiple successive proposed amended complaints that needlessly increased the cost of the litigation. *Id.* at p. 6. Plaintiffs' counsel sent correspondence to Cardinal Health's counsel that conceded that Plaintiffs have no basis for seeking punitive damages, but despite this, Plaintiffs still filed a proposed amended complaint seeking punitive damages. *Id.* at pp. 8-9. Plaintiffs then filed another motion for leave to file a proposed Second Amended Complaint, which does not seek punitive damages, that Cardinal Health contends is still deficient. *Id.* at p. 9.

Cardinal Health reiterates that Plaintiffs' breach of contract claim was a compulsory counterclaim required to have been brought in the 2017 litigation. *Id.* at pp. 11-12. Second, Plaintiffs have put forth no legitimate basis for Marco Moran or Jino Moran to assert a direct claim against Cardinal Health. *Id.* at p. 13. Cardinal Health tried multiple times to inform Plaintiffs that the Morans are not proper plaintiffs, but each time, Plaintiffs have failed to provide a good faith legal basis for naming them as plaintiffs. *Id.* at p. 14. Finally, Plaintiffs did not make a reasonable inquiry into the validity of their claims. *Id.* at pp. 14-17.

On July 14, 2025, Plaintiffs filed an opposition to Cardinal Health's motion for sanctions.  [doc. #37].  Plaintiffs request that the Court defer consideration of Cardinal Health's Rule 11 motion until a decision is made regarding Plaintiffs' motion for leave to file a Second Amended Complaint.  *Id.* at p. 7.  Plaintiffs argue that Jino Moran is the owner of the pharmacy, and Cardinal Health breached the Franchise Agreement and Credit Application.  *Id.* at p. 4.  Jino Moran is a proper plaintiff as he has standing.  *Id.* at p. 5.  As for the compulsory counterclaim argument, the prior suit was dismissed without prejudice and was based on an open account, not a breach of contract claim.  *Id.* at p. 4.  Furthermore, Jino Moran was not included as a party in the prior litigation, so the doctrine of res judicata does not apply.  *Id.* at p. 8.

Plaintiffs reiterate that they alleged a basis for a breach of contract claim.  *Id.* at p. 11.  The existence of a contract between Plaintiffs and Cardinal Health is not contested.  *Id.* at p. 12.  The proposed Second Amended Complaint states multiple ways that Cardinal Health breached the contract.  *Id.*  As a result of this breach, Plaintiffs were injured.  *Id.*  Plaintiffs contend that Cardinal Health is asking this Court to impose Rule 11 sanctions simply because it disagrees with Plaintiff's legal conclusions, and the sanctions motion is filed solely to harass Plaintiffs and unnecessarily increase litigation expenses.  *Id.* at p. 7.

On July 21, 2025, Cardinal Health filed a reply in support of its motion for sanctions.  [doc. #38].  First, Plaintiffs' generalized res judicata arguments do not specifically address the compulsory counterclaim issue.  *Id.* at p. 2.  The fact that Jino Moran was not a party to the 2017 litigation does not defeat waiver as he should have intervened.  *Id.* at p. 4.  Since Jino Moran signed the contracts in his official capacity as an officer of Gray Pharm, he was never a party to the contracts and cannot have a breach of contract claim.  *Id.*  Moreover, Plaintiffs fail to address how they made a reasonable inquiry into the validity of their claims.  *Id.* at p. 5.  Even if Plaintiffs were

previously unaware, the filing of the motion to dismiss should have put them on notice of the deficiencies. *Id.* Cardinal Health contends that since Plaintiffs have now proposed and/or filed four separate complaints, and, although the legal theories shifted in each, each complaint was deficient, and Plaintiffs should be sanctioned. *Id.* at pp. 7-8.

Briefing is complete. Accordingly, the matters are ripe.

## Law & Analysis

### I.    Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(1)(A), "[a] party may amend its pleading once as a matter of course . . . 21 days after serving it." FED. R. CIV. P. 15(a)(1)(A). Alternatively, if "the pleading is one to which a responsive pleading is required," a party may amend once as a matter of right within "21 days after service of either a responsive pleading or . . . a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B).

If the time for a party to amend as a matter of course has expired, then the party may amend with the written consent of the opposing party or with leave of court. The court shall grant a party leave to amend its pleading "freely . . . when justice so requires." FED. R. CIV. P. 15(a)(2). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court . . ." *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998) (quoted source omitted). Yet, "[i]n the context of motions to amend pleadings, 'discretion' may be misleading, because Fed. R. Civ. P. 15 (a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). A district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

In deciding whether to grant a party leave to amend, the court considers the following factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman*, 371 U.S. at 182). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). Therefore, courts review the proposed amended complaint under "'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Id.* (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)).

A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678. A pleading

comprised of "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,* 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

### (a) Compulsory Counterclaim

Cardinal Health contends that "any legal rights related to the Credit Agreement and Franchise Agreement were compulsory counterclaims that were required to be brought in the 2017 Litigation." [doc. #32, p. 12]. Plaintiffs argue that since the prior state court judgment was dismissed without prejudice, Cardinal Health's compulsory counterclaim is frivolous. [doc. #33, p. 5].

In diversity cases substantive state law determines the preclusive effect of a prior state court judgment. *Kurzweg v. Marple*, 841 F.2d 635, 639 (5th Cir. 1988). Louisiana Code of Civil Procedure requires that "the defendant in the principal action shall assert in a reconventional demand[2] all causes of action that the defendant may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action." LA. CODE CIV. PROC.

---

[2] A reconventional demand is the term for a compulsory counterclaim under Louisiana law.

art. 1061(b). "Judicial efficiency is served by requiring the defendant through a compulsory reconventional demand to assert all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the basis for the plaintiff's action." *Wicker v. Louisiana Farm Bureau Cas. Ins. Co.*, 2018-0225 (La. App. 1 Cir. 9/21/18), 257 So. 3d 817, 822 n.1 (quotation and quotation marks omitted). "[I]f the defendant has a cause of action arising out of the subject matter of the plaintiff's action, then the defense of res judicata will prevent relitigation of issues common to both causes of action except as otherwise provided by law." *Id.* "In the context of a *res judicata* exception, [Louisiana courts have] followed the federal analysis of a 'transaction or occurrence' in the compulsory counterclaim context." *Zen-Noh Grain Corp. v. Thompson*, 13-110 (La. App. 5 Cir. 8/27/13), 123 So. 3d 777, 779. This analysis involves a four-part inquiry as to:

> (1)Whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the counterclaim is compulsory. This standard is taken from Fed.R.Civ.P. 13(a), which provides that a counterclaim is compulsory if it "arises out of the transaction or occurrence which is the subject matter of the opposing party's claim.

> *Id.*

"The doctrine of res judicata is *stricti juris*, and any doubt concerning the application of res judicata must be resolved against its application." *Entrada Co., LLC v. Pressley*, 50,261 (La. App. 2 Cir. 12/2/15), 183 So. 3d 617, 619. "The relevance of a dismissal with prejudice, as opposed to without prejudice, is that the dismissal with prejudice has res judicata effect on the parties to the suit dismissed, whereas the dismissal without prejudice allows the re-filing of the matter at hand." *Palermo v. Century Indem. Co.*, 2017-825 (La. App. 3 Cir. 5/23/18), 248 So. 3d

462, 468 (citation omitted). "A judgment that dismissed the first action without prejudice is the second of three exceptions to the general rule of *res judicata*." *Entrada*, 183 So. 3d at 620.

The 2017 Petition filed by Cardinal Health in the Fourth Judicial District Court did pertain to the Credit Application and Franchise Agreement that are the subject matter of this case. [doc. #29, p. 18]. However, that lawsuit was dismissed without prejudice on September 21, 2018. *Id.* at p. 156. In Louisiana, for the res judicata doctrine to apply, the prior dismissal must be with prejudice. Thus, the proposed Second Amended Complaint is not futile as the breach of contract claim is not barred by the res judicata doctrine.

Accordingly, the Court does not find that the proposed Second Amended Complaint is futile on the basis of a compulsory counterclaim.

*(b) Improper Venue*

Next, Cardinal Health contends amendment is futile because this is an improper venue. The Supreme Court has concluded that "[28 U.S.C.] § 1406(a) and [Federal Rule of Civil Procedure] 12(b)(3) are not proper mechanisms to enforce a forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 61 (2013). Instead, 28 U.S.C. § 1404(a) provides a means of enforcement. *Id.* Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marnie Const. Co.*, 571 U.S. at 55. "[A] case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.* at 56. Pursuant to § 1391(b), a civil action may

be brought in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(1)-(2).

Cardinal Health argues that Section XII(C) of the Franchise Agreement states that exclusive jurisdiction is in the state and federal courts of Franklin County, Ohio.  [doc. #32, p. 16].  Since Plaintiffs filed in the wrong court, the proposed amended complaint would be subject to dismissal pursuant to Rule 12(b)(3).  *Id.*  Plaintiffs, on the other hand, argue that Cardinal Health has waived the forum selection clause.  [doc. #33, p. 10].

As the Supreme Court has made clear, just because a forum selection clause exists does not mean that a complaint is subject to dismissal under Rule 12(b)(3).  Instead, a party must show that venue is improper pursuant to § 1391(b).  Cardinal Health has made no such showing, and thus, the proposed Second Amended Complaint is not futile on this basis.

Accordingly, the Court does not find that the proposed Second Amended Complaint is futile on the basis of improper venue.

*(c) Failure to State a Claim*

Cardinal Health argues that even if Plaintiffs' breach of contract claim was not a compulsory counterclaim, Plaintiffs still have not stated a claim for breach of contract under either the Credit Application or Franchise Agreement.  [doc. #32, p. 12].  Plaintiffs contend they have stated a claim for breach of contract against Cardinal Health.  [doc. #33, p. 5].

Cardinal Health argues in a footnote in its opposition to Plaintiffs' motion to amend that the choice of law clause in the Franchise Agreement requires Ohio law to be applied to the breach of contract.  [doc. #32, p. 14 n.7].  However, throughout Cardinal Health's argument regarding the

breach of contract claim, it cites both Louisiana and Ohio law.  *Id.* at pp. 14-15.  Plaintiffs did not address this proposition in its reply.  "In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. . ."  *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Louisiana's choice-of-law analysis is set forth in articles 3515-3549 of the Louisiana Civil Code.  Louisiana Civil Code article 3540 provides for the application of the parties' choice-of-law to contractual issues.  *Zodiac 21, Inc. v. Oyo Hotels, Inc.*, No. CV 20-63-SDD-RLB, 2020 WL 6479160, at *9 (M.D. La. Nov. 3, 2020).  The choice of law clause in the Franchise Agreement states that "this Agreement. . . shall be governed by the laws of the State of Ohio."  [doc. #29, p. 92].  The Credit Application's choice of law provision states that "this Agreement will be governed by. . .the laws of the State of Ohio."  *Id.* at p. 27.  The Court notes that the Ohio breach of contract claim clearly falls within the scope of the clause.  The parties chose Ohio law to apply to the Franchise Agreement.  [doc. #29, p. 92].

Under article 3540, the Court must apply Ohio law unless Ohio law "contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."  LA. CIV. CODE art. 3540.  Plaintiffs bear the burden of pleading facts demonstrating that the application of Ohio law would violate a public policy of the state of Louisiana.  *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994).  Plaintiffs have not identified any public policies of Louisiana that would be disserved by the application of Ohio law to their breach of contract claims.  Accordingly, the Court will give full effect to the parties' choice-of-law clause and apply Ohio law to the breach of contract claim.

In Ohio, "[t]he elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Hillier v. Fifth Third Bank*, 2020-Ohio-3679, 154 N.E. 3d 1266, 1272; *see also Gen. Truck Drivers, Chauffeurs, Warehousemen & Helpers Loc. Union No. 957 v. Dayton Newspapers, Inc.*, 2008-Ohio-918, 884 N.E.2d 662, 673.[3]

### (1) Jino Moran

The proposed Second Amended Complaint names both Gray Pharm and Jino Moran as Plaintiffs.  [doc. #29, p. 3].  The proposed Second Amended Complaint factually alleges that "Marco Moran executed a Credit Application with Defendant . . .on behalf of Gray Pharm Incorporated (Pharmacy)," and "Jino Moran signed a Medicine Shoppe Franchise Agreement (FA) on behalf of Pharmacy." *Id.* at pp. 3-4.  There is no allegation that Jino Moran signed any contract with Cardinal Health individually.  Rather, all the allegations state that Jino Moran signed on behalf of Gray Pharm as its owner. *Id.* at p. 98.

Ohio courts have held that shareholders, officers, and agents of a corporation or business do not have individual claims against a defendant. *See Eppich v. Nureddin*, 2011 WL 1938510, at *3 (Ohio App. 8 Dist., 2011) (finding that a shareholder did not have an individual claim even if he was indirectly harmed as the "two harms are identical and any claim must be filed by the corporation itself"); *Lindsley v. Roe*, 196 Ohio App.3d 596, 604 (Ohio App. 6 Dist., 2011) ("A corporate officer who signs a contract twice, once in the name of the corporation and again in only

---

[3] The Court notes that, even if it had applied Louisiana law, the outcome would be the same. In Louisiana, the essential elements of a breach of contract claim are: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108-09; *Hercules Mach. Corp. v. McElwee Bros.*, No. CIV.A. 01-3651, 2002 WL 31015598, at *9 (E.D. La. Sept. 9, 2002) ("The central elements of a breach of contract are the existence of a contract, a party's breach thereof, and damages.").

the officer's name, with no corporate designation or corporate title, is personally bound under the contract."). "Only a party to a contract or an intended third-party beneficiary may bring an action on a contract." *Stride Studios, Inc. v. Alsfelder*, 219 N.E.3d 986, 991 (Ohio App. 1 Dist., 2023). By signing as the owner of Gray Pharm, Jino Moran was not signing the contract as an individual. There is also no assertion in the Franchise Agreement or Credit Application that Jino Moran was an intended third-party beneficiary. Thus, Jino Moran has no basis for individual liability under this contract or to assert any individual claims.

Accordingly, **IT IS ORDERED** that the Motion for Leave to File Plaintiffs' Second Amended Complaint is **DENIED** to the extent it seeks to add Jino Moran as a Plaintiff.

*(2) Gray Pharm*

There is no dispute amongst the parties that Gray Pharm and Cardinal Health entered into a contract. Specifically, these parties entered into an agreement through the Credit Application and Franchise Agreement. [doc. #29, pp. 24, 74]. The proposed Second Amended Complaint alleges that these contracts were entered into and attaches the contracts. Thus, Gray Pharm has alleged that a contract existed between Gray Pharm and Cardinal Health.

As for the second element, Gray Pharm alleges that it performed its duties under the contracts. Specifically, Gray Pharm alleges that it fully complied with Section III (1) of the Credit Application Agreement. *Id.* at p. 4. Gray Pharm alleges that it consistently made payments to Cardinal Health and was never in default. *Id.* at p. 10. One of Gray Pharm's duties under the Franchise Agreement was to make timely payments, and Gray Pharm alleges that it did so. *Id.* at p. 82. Thus, Gray Pharm has alleged that it performed pursuant to the contract.

Third, Gray Pharm alleges that Cardinal Health breached both the Credit Application and the Franchise Agreement. *Id.* at p. 8. Cardinal Health terminated Gray Pharm's ability to process

insurance claims and withheld a $101,000 check from Express Scripts.  *Id.*  Cardinal Health also violated Section VI of the Franchise Agreement when it terminated the Franchise Agreement by alleging that Gray Pharm owed it $144,789.57.  *Id.* at p. 11.  By disabling Gray Pharm's access to LeaderNet and the Trade Account, Cardinal Health again breached the contract.  *Id.*

Cardinal Health argues that Gray Pharm cannot establish that a breach occurred because the Franchise Agreement states that Cardinal Health can terminate the Franchise Agreement without cause upon ninety days' notice or with cause immediately for certain reasons.  [doc. #32, p. 13].  While Section VI of the Franchise Agreement supports Cardinal Health's arguments regarding termination, Gray Pharm alleges that Cardinal Health terminated these services and breached the contract based on false claims that Gray Pharm had not made timely payments to Cardinal Health.  There are apparently conflicting provisions in the Franchise Agreement.  The Franchise Agreement allows a "[f]ranchisee [] the right, within a period of ten (10) days, to cure any default or defaults described in paragraphs (03), (04), (08), or (09) above, and if such default is cured by Franchisee within such ten (10) day period . . . the Company shall not have the right to terminate this Agreement."  [doc. #29, p. 86].  Paragraph (09) states that if a franchisee fails to pay when monies is owed to the Company, the Company can terminate immediately.  *Id.*  Regardless, Gray Pharm has alleged that it paid Cardinal Health and was never in default.  *Id.* at p. 10.  Based on these allegations and the above quoted clause in the Franchise Agreement, Cardinal Health could be found to have breached the contract.

Finally, Gray Pharm has alleged that it suffered damages from Cardinal Health's breach.  As a result of Gray Pharm's inability to process insurance claims, it lost approximately $75,000 in prescription sales.  *Id.* at p. 8.  Further, Gray Pharm's revenues significantly declined.  *Id.* at p. 11.  Gray Pharm was also forced to expend resources and funds to obtain pharmaceutical products from

other distributors at a higher price and take out loans from private entities. *Id.* at pp. 12, 13. As a result of the added costs and drop in income, Gray Pharm had to sell the pharmacy for below-market value. *Id.* at p. 13. Thus, Gray Pharm has alleged that it suffered damages from the supposed breach.

Viewing the alleged facts in the light most favorable to Gray Pharm, it has stated a plausible breach of contract claim against Cardinal Health. Plausibility does not equate to possibility or probability that the claim will succeed. A plaintiff need only allege enough facts to plausibly state a claim, and, here, Gray Pharm has done that. Gray Pharm has alleged facts which, if accepted as true, satisfy the elements of a breach of contract claim under Ohio (and Louisiana) law.

Accordingly, **IT IS ORDERED** that the Motion for Leave to File Plaintiffs Second Amended Complaint is **GRANTED** to the extent Gray Pharm seeks to assert a breach of contract claim against Cardinal Health.

**IT IS ORDERED** that Gray Pharm is to prepare and file an amended Second Amended Complaint removing all claims by Jino Moran or Marco Moran **WITHIN FOURTEEN (14) DAYS OF THIS ORDER**.

## II.    Motion to Dismiss

Since the Court has granted in part Plaintiffs' motion to amend, the Second Amended Complaint will supersede the original Petition. An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). Further, many of the claims alleged in the original Petition are not alleged in the Second Amended

Complaint.  The only claim remaining is a breach of contract claim, and, as discussed above, Gray Pharm has stated a plausible claim in the Second Amended Complaint.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss Plaintiff's Petition for Damages [doc. #16] be **DENIED AS MOOT**.

### III.    Motion for Sanctions / Request for Sanctions

Plaintiffs argue that Cardinal Health opposed their motion for leave to amend without a good faith reason, and thus, sanctions are warranted under the Western District of Louisiana's Local Rule 7.6.  [doc. #33, p. 10].  Plaintiffs ask for this Court to sanction Cardinal Health and award costs and attorneys' fees against Cardinal Health.  *Id.*  Local Rule 7.6 states that "[t]he court may impose proper sanctions on a party or counsel who oppose such a motion without a good faith reason."

 Cardinal Health, for its part, contends that Plaintiffs and their counsel did not conduct a reasonable inquiry into their claims, and their arguments were not objectively reasonable under the circumstances.  [doc. #35, p. 17].  As a result, Cardinal Health argues that, at a minimum, Plaintiffs should be required to pay Cardinal Health's attorneys' fees and costs under Federal Rule of Civil Procedure 11.  *Id.*

Rule 11 was "originally enacted in 1938 to curb tendencies toward untruthfulness in pressing a client's suit."  *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1023 (5th Cir. 1994) (citations omitted).  Rule 11 provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b)(1)-(4).

The Fifth Circuit has found that Rule 11 places three duties on counsel: "(1) counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation." *St. Amant. v. Bernard*, 859 F.2d 379, 382 (5th Cir. 1988). All of these obligations are independent duties of the signing attorney, so Rule 11 is violated if any one of them is breached. *Thomas v. Cap. Sec. Servs., Inc.*, 812 F.2d 984, 988 (5th Cir. 1987). Ultimately, the district court has broad discretion in awarding sanctions for violations of Rule 11. *Independent Fire Ins. Co. v. Lea*, 979 F.2d 377, 378 (5th Cir. 1992).

It is true that Rule 11 sanction decisions must comport with due process; however, simply allowing the individual accused of a Rule 11 violation a chance to respond through the submission of a brief is usually all that due process requires. *Childs*, 29 F.3d at 1027 (citations omitted). A Rule 11 motion must "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." FED. R. CIV. P. 11(c)(2). "Compliance with the service requirement is a mandatory prerequisite to an award of sanctions under Rule 11." *In re Pratt*, 524

F.3d 580, 586 (5th Cir. 2008).  Here, the motion was properly served on Plaintiffs prior to its filing. [doc. #35, p. 17].

The Court finds that sanctions are not warranted against any party or attorney in this case. The motion for leave to amend has been granted in part and denied in part, and both parties presented arguments that were researched and reasonably supported.  Each party experienced both favorable and unfavorable rulings.  Disagreement between litigants is an inherent part of the adversarial process and does not, on its own, justify the imposition of sanctions.  Local Rule 7.6 permits sanctions where a party opposes a motion without a good faith basis, but Plaintiffs have not shown that Cardinal Health's opposition lacked good faith, particularly given that the Court partially agreed with its position.  Likewise, Cardinal Health has not demonstrated that Plaintiffs failed to conduct a reasonable inquiry into their proposed claims.  The Court recognizes Cardinal Health's frustration with the submission of multiple versions of the amended complaint via email; however, such procedural back-and-forth is not uncommon in litigation and does not rise to the level of sanctionable conduct, especially where the proposed Second Amended Complaint stated a plausible breach of contract claim.

Accordingly, **IT IS ORDERED** that the Motion for Leave to File Plaintiffs' Second Amended Complaint [doc. #29] is **DENIED** to the extent it requests for this Court to impose Local Rule 7.6 sanctions on Cardinal Health.

**IT IS FURTHER RECOMMENDED** that the Rule 11 Motion for Sanctions Against Plaintiffs and/or Plaintiffs' Counsel [doc. #34] be **DENIED**.

## IV.    Request to Strike

Although not raised in a separate motion, in Cardinal Health's opposition to the motion to amend, it argues that Plaintiffs make scandalous allegations that must be stricken.  Specifically,

Plaintiffs allege that Cardinal Health filed a fraudulent lawsuit and that an employee of Cardinal Health committed criminal perjury by knowingly signing a false affidavit. [doc. #32, p. 16]. "Even assuming these scandalous allegations were true, they are immaterial to Plaintiffs' attempted breach of contract claim." *Id.* at p. 17. Thus, Cardinal Health asks that these statements be stricken. *Id.*

Rule 12(f) authorizes a court to order stricken from any pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are disfavored and infrequently granted." *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 767 (N.D. Tex. Aug. 28, 2002) (citing *Augustus v. Board of Public Instruction of Escambia Cnty., Florida*, 306 F.2d 862, 868 (5th Cir. 1962)). Scandalous allegations "'improperly cast derogatory light on someone, most typically on a party to the action.'" *Sharper v. Right Away Maintenance Co.*, No. CV 22-560-BAJ-SDJ, 2023 WL 4777911, at *4 (M.D. La. July 26, 2023) (quoting *Boltex. Mfg. Co., L.P. v. Ulma Forja, S. Coop*, 2018 WL 6622839, at *1 (S.D. Tex. Nov. 28, 2018)). But "'it is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action.'" *Id.* (quoting *Boltex Mfg. Co., L.P.*, 2018 WL 6622839, at *1).

Here, Gray Pharm alleges that Cardinal Health breached their contract by terminating certain services and agreements. Cardinal Health contends it did so because Gray Pharm failed to make timely payments. Gray Pharm, in turn, denies this and asserts that it paid on time, characterizing Cardinal Health's allegations to the contrary as false. The 2017 litigation, including the affidavit submitted by a Cardinal Health employee, is relevant to resolving these factual issues. This Court is tasked with determining the truth, and that responsibility cannot be fulfilled by

striking portions of Gray Pharm's Second Amended Complaint merely because they are labeled by Cardinal Health as "scandalous."

Accordingly, **IT IS ORDERED** that Cardinal Health's request to strike certain statements in the proposed Second Amended Complaint is **DENIED**.

### Conclusion

For the reasons stated above,

**IT IS ORDERED** that the Motion for Leave to File Plaintiffs Second Amended Complaint [doc. #29] filed by Plaintiffs Gray Pharm, Inc., d.b.a Medicine Shoppe Pharmacy #1167 and Marco Moran is **GRANTED IN PART and DENIED IN PART**.[4]

**IT IS RECOMMENDED** that the Motion to Dismiss Plaintiff's Petition for Damages [doc. #16] filed by Defendant Cardinal Health 110, LLC, be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that the Rule 11 Motion for Sanctions Against Plaintiffs and/or Plaintiffs' Counsel [doc. #34] filed by Defendant Cardinal Health 110, LLC, be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

---

[4] Although the undersigned has ruled on Plaintiffs' Motion for Leave to File Plaintiffs Second Amended Complaint within a Report and Recommendation and Memorandum Order, this motion is not excepted in 28 U.S.C. § 636(b)(1)(A) and not dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure. Therefore, this order issues of the date of this Report and Recommendation and Memorandum Order.  Any objection/appeal must be made to the district judge in accordance with Rule 72(a) of the Federal Rules of Civil Procedure within fourteen (14) days of this date.

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 5th day of August, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE